UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM BRADFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:04CV1710 CDP |
| | ) |
| LINDA MEADE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before me on defendants' second motion for summary judgment. Bradford is being detained at the Missouri Sexual Offender Treatment Center (MSOTC) pending a state-court determination as to whether he should be committed as a sexually violent predator (SVP) under Missouri law.[1] In this pro se § 1983 action, Bradford alleges that his first amendment and due process rights were violated when he was denied permission to write, edit, publish, and distribute a patient newsletter. Because the denial is reasonably related to security concerns, defendants are entitled to judgment as a matter of law. My analysis follows.

---

[1] Persons finally adjudged by a state court to be an SVP are committed to the custody of the director of the Missouri Department of Mental Health (MDMH) "for control, care and *treatment*." Mo. Rev. Stat. § 632.492 (emphasis added). In contrast, civil detainees like Bradford for which only probable cause has been found to believe they are SVPs are "transferred to an appropriate secure facility . . . for *evaluation* as to whether the person is a sexually violent predator." Mo. Rev. Stat. § 632.489.4 (emphasis added).

## Undisputed Facts

Linda Meade is the Director of Psychology at MSOTC. On June 9, 2004, Bradford requested permission to write, publish, and distribute a patient newsletter "to express and debate various opinions of a legal, religious, political and philosophical nature – even those unpopular with the MSOTC Administration." Meade denied the request on June 14, 2004.

## Discussion

A court may grant a motion for summary judgment only if it finds that all the evidence before it demonstrates "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden is on the moving party. Id. The court must view all facts and resolve all ambiguities in favor of the non-moving party. Id. However, the non-moving party must set forth specific facts showing that there is sufficient evidence to allow a jury to return a verdict in that party's favor. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986).

The due process rights of pretrial detainees serve as a guide to determining the due process rights of civil detainees such as Bradford. In Bell v. Wolfish, 441 U.S. 520 (1979), the leading case concerning the due process rights of pretrial detainees, the Supreme Court wrote:

> [I]n evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against due process of law, we think the proper inquiry is whether those conditions amount to punishment of the detainee.

Id. at 535. The Court reasoned that due process of law prohibited the government from punishing a pretrial detainee prior to an adjudication of guilt. Id. Not every restriction placed on a pretrial detainee, however, is considered punishment in the constitutional sense. Id. at 537-38. The Court noted that the purpose of a pretrial detention facility is to confine and detain people. Id. at 537. To further that purpose, a pretrial detainee's freedom of choice and movement necessarily is restricted in a manner it would not be if he were free to walk the streets. Id. Additionally, the government also has

> legitimate interests that stem from its need to manage the facility in which the individual is detained. These legitimate operational concerns may require administrative measures that go beyond those that are, strictly speaking, necessary to ensure the detainee shows up for trial. For example, the Government must be able to take steps to maintain security and order at the institution and make certain no weapons or illicit drugs reach detainees.

Id. at 540. Consequently, restrictions imposed on a pretrial detainee are not considered punishment as long as they are "reasonably related" to a legitimate governmental objective such as maintaining the safety, security, and good order of the detention facility. Id. at 537-40.

In support of summary judgment, Meade testified that she denied Bradford permission to put out a patient newsletter because the exchange of items between residents could interfere with the safety of residents and others in the facility. For example, exchange could create "quid pro quo" arrangements between residents, lead to intimidation of residents, or constitute a "grooming behavior" between residents (i.e., giving something in expectation of future sexual behaviors). Because the restriction on Bradford was reasonably related to the legitimate goal of maintaining the safety and security of MSOTC and its residents, it cannot be considered punishment under Bell. For this reason, Bradford's due process rights were not violated as a matter of law.

To the extent Bradford is attempting to allege that his procedural due process rights were violated by Meade's denial of his request to publish a newsletter, that claim must also fail. See Smith v. Copeland, 892 F. Supp. 1218, 1233 (E.D. Mo. 1995), aff'd, 87 F.3d 265 (8th Cir. 1996) ("[T]here exists no basis in the Due Process Clause or elsewhere in the Constitution for requiring that discipline not be imposed upon a pretrial detainee for violations of institutional discipline without the particular procedural mechanisms invoked by plaintiff here, including notice, a hearing or specific findings, a right to counsel and an

independent investigation of the charges . . . In this context, then, plaintiff's Due Process right is not to be punished for misconduct in a manner that is not reasonably related to a legitimate institutional objective. The determination whether this right has been infringed does not extend to a de novo review of the jail official's decision whether and how to discipline plaintiff."). Because the restriction on Bradford's ability to put out a patient newsletter was not punishment, any due process claims fail as a matter of law.

Bradford also argues that his first amendment rights to free speech, press, and religion were violated. Because Bradford does not possess the full range of freedoms enjoyed by people who are not detainees, even when an MSOTC "restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in light of the central objective of prison administration, safeguarding institutional security." Bell, 441 U.S. at 547. In Bell, the Supreme Court held that a restriction on reading materials of pretrial detainees did not violate the First Amendment because the restriction was a "rational response" to the legitimate security concerns of the institution. Id. at 550; see also, Turner v. Safley, 482 U.S. 78, 89 (1987) ("when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is

reasonably related to legitimate penological interests."). In finding the restriction constitutional, the Supreme Court also noted that it was content-neutral and that pretrial detainees had alternative means of obtaining reading materials. Bell, 441 U.S. at 551. Similarly, Meade denied Bradford's request to publish a newsletter not because of its proposed content but to maintain the safety and security of MSOTC residents and staff. Moreover, Bradford was not prevented from expressing his "opinions of a legal, religious, political and philosophical nature." For these reasons, Bradford's first amendment free speech and press claims fail.

Bradford's religious freedom claim fails because he has not established the existence of a sincerely held religious belief. See Goff v. Graves, 362 F.3d 543, 548 (8th Cir. 2004).[2] Bradford's vague allegations about "religion" and "religious beliefs" are insufficient to create a triable issue on this first amendment claim because they do not even identify what Bradford's purported religious beliefs are and do not claim that these beliefs are sincere. Bradford does not even address this issue in opposition to summary judgment. Even if Bradford had established the existence of a sincerely held religious belief, his claim would still fail as a

---

[2]Although former plaintiff Troy Spencer identified his religious beliefs in the complaint, Bradford did not.

matter of law because, as discussed above, the restriction on his right to put out a newsletter was reasonably related to legitimate safety concerns. See id. For these reasons, I am granting defendants' motion for summary judgment on this first amendment claim.

Finally, as defendant correctly notes, all claims asserted against defendant Nicholson were previously dismissed in my prior Order dated November 30, 2005.[3] Although Bradford alleges a "state-law component" to the claims, there are no state law claims actually asserted in the complaint. Therefore, I do not have supplemental jurisdiction under 28 U.S.C. § 1367. Because all claims have now been dismissed, my final judgment will issue. To the extent Bradford attempts to raise new claims[4] in his opposition to summary judgment, I do not consider them because they are not properly before me. Because all requested relief has been denied, Bradford's request for injunctive relief is also denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' second motion for summary judgment [#41] is granted, and plaintiff's complaint is dismissed with prejudice.

---

[3] That Order granted Spencer's motion to dismiss his claims. Spencer was the only plaintiff to assert claims against Nicholson.

[4] In opposition to summary judgment, Bradford alleges for the first time violations of the Fifth Amendment and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc.

A Judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of February, 2008.